UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH KING,

    Plaintiff,

v.                                     Case No: 2:14-cv-341-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Deborah King appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons discussed herein, the decision of the Commissioner is reversed and this matter is remanded for further proceedings consistent with this Opinion and Order pursuant to 42 U.S.C. § 405(g), sentence four.

### I.    Issues on Appeal

Plaintiff raises five issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly considered Plaintiff's right heel keloid; (2) whether the ALJ's determination that Plaintiff's headaches are not a severe impairment is supported by substantial evidence; (3) whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence; (4) whether the ALJ erred by failing to consult a vocational expert ("VE"); and (5) whether the case should be remanded for evaluation by a different ALJ.

## II.     Procedural History and Summary of the ALJ's Decision

On July 29, 2010, Plaintiff filed applications for a period of DIB and SSI alleging that she became disabled and unable to work on November 15, 2009.[1]  Tr. 118-21, 122-23.  The Social Security Administration denied her claim initially on December 23, 2010 and upon reconsideration on April 12, 2011.  Tr. 63, 64; Tr. 65, 66.  Plaintiff requested and received a hearing before ALJ Larry J. Butler on October 25, 2012, during which she was represented by an attorney.  Tr. 34-62, 94-95.  Plaintiff testified at the hearing.

On January 2, 2014, the ALJ issued a decision finding that Plaintiff is not disabled and denying her claim.  Tr. 18-27.  The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014.  Tr. 20.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 15, 2009, the amended alleged onset date ("AOD").  *Id.*  At step two, the ALJ determined that Plaintiff has the following severe impairments: depression and anxiety.  *Id.*  At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 21.

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional

---

[1] Plaintiff initially alleged that she became unable to work on January 1, 2008.  Tr. 118, 122.  At the hearing before the ALJ, Plaintiff's counsel stated that she was amending her alleged onset date to November 15, 2009.  Tr. 38.

levels, but is limited to simple, routine, repetitive tasks with no interactions with the public. Tr. 22. The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible. Tr. 23-24. The ALJ then found that Plaintiff was not capable of performing any of her past relevant work ("PRW") but that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform. Tr. 26-27. Thus, the ALJ found that Plaintiff is not disabled and denied her claim. Tr. 27.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on May 24, 2014. Tr. 1-11, 14. Accordingly, the ALJ's January 2, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on June 23, 2014. Doc. 1.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of persuasion

through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

"The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote*, 67 F.3d at 1560 (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

Accordingly, where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

## IV. Discussion

### a. Whether the ALJ properly considered Plaintiff's right heel keloid

Plaintiff first argues that the ALJ erred by failing to adequately consider that Plaintiff's right heel keloid, diagnosed by her treating physician, Dr. Scott Fields, limits her ability to stand and walk, and therefore Plaintiff is more limited than determined by the ALJ. Defendant acknowledges that the ALJ did not specifically mention Plaintiff's diagnosis of right heel keloid, but contends that the ALJ considered Dr. Fields' diagnosis and opinion regarding Plaintiff's limitations and properly determined that Dr. Fields' opinion identifying additional limitations was not supported by the record and therefore entitled to little weight. Defendant further asserts that the record reflects the ALJ considered Plaintiff's foot impairment and properly rejected Dr. Fields' opinion, and therefore any failure to specifically mention keloid was harmless.

Under the Regulations, opinions of examining sources usually are given more weight than nonexamining source opinions, and opinions of treating sources are given greater weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c). Examining source opinions are evaluated based upon the degree to which they consider all relevant evidence in the record, including the opinions of other medical sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

By contrast, "because nonexamining sources have no examining or treating relationship with [a plaintiff], the weight [the Social Security Administration] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Any medical source opinion may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Moreover, opinions on some issues, such as a claimant's ability to work and whether she is disabled, are reserved exclusively for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Opinions on these issues, even when offered by treating physicians, are not entitled to controlling weight. SSR 96-5p.

Records of Dr. Fields dated July 7, 2010 state that Plaintiff had a "painful lesion on heel [for] many years" and include a diagnosis of right heel keloid. Tr. 219-20. The records also state that Plaintiff declined a referral to a podiatrist. Tr. 220. Records from a January 17, 2011 visit to Dr. Fields also state that "there is a 2cm keloid type lesion over posterior heel, this is [sic] been present for over 2 decades" and acknowledged that Plaintiff suffers from foot pain. Tr. 290. April 4, 2011 records state that Plaintiff's gait and station were intact with no motor deficits and Plaintiff does not require an assistive device, but note that the heel keloid causes pain and Plaintiff cannot afford treatment. Tr. 301. Dr. Fields also completed a physical capacity evaluation on September 22, 2012, in which he opines that Plaintiff can

stand or walk only for one hour at a time and for a total of two hours during an eight hour workday. Tr. 340-41. At the hearing, Plaintiff testified that she was unable to continue her employment with Burlington Coat Factory because of the painful growth on her foot which prevents her from wearing dress shoes and makes standing difficult. Tr. 44. Plaintiff also testified that an injury to her hips causes pain and prevents her from being able to stand or walk for long periods. *Id.*

The ALJ's opinion states that Plaintiff "has a growth on her foot and can no longer wear dress shoes. She has a hard time standing. She had a hip injury and has pain all the time." Tr. 22. The ALJ further acknowledged Plaintiff's right foot growth, noting that "[s]he just lives with it" and "[i]t caused problems when she worked." Tr. 23. The ALJ's opinion states that he "considered several questionnaires completed by the claimant's primary care physician, Dr. Fields, but has given these opinions no weight." Tr. 25 (citations omitted). The ALJ references Dr. Fields' opinions as to mental work-related functional limitations, but ultimately discounted those opinions because "Dr. Fields is not a psychiatrist or psychologist – he is an internist" and determined they are inconsistent with other records from Lee Mental Health, which state that Plaintiff's condition improved with medication. *Id.*

The ALJ further noted that Dr. Fields opined Plaintiff is limited to less than sedentary work, but found this opinion inconsistent with the ALJ's own finding that Plaintiff has no severe physical impairments. *Id.* The ALJ highlighted Dr. Fields' opinion with respect to headaches and fatigue, noting that these would not limit Plaintiff to less than sedentary work, and degenerative joint disease, but found that

this diagnosis was not confirmed elsewhere in the medical evidence of record. *Id.* Notably, the ALJ did not mention Plaintiff's heel growth in this discussion, whether by specific reference to "keloid" or otherwise.

Under the Regulations, the ALJ properly could assign Dr. Fields' opinion reduced weight if it was inconsistent with other medical evidence in the record, the doctor's own records, or Plaintiff's testimony. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); SSR 96-2p; *Crawford*, 363 F.3d at 1159-60; *Magill v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 92, 94 (11th Cir. 2005) ("[A]n ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion.") (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). Here, however, Dr. Fields' treatment records reflect that Plaintiff had a painful heel keloid, and he determined – albeit on a conclusory checklist form – that Plaintiff's physical limitations limited her to standing and walking only for one hour at a time and a total of two hours in an eight hour workday. Tr. 341. His opinion is consistent with Plaintiff's testimony that she was unable to continue her most recent employment in part because she has difficulty standing due to her foot pain.

Upon review of the entire record, the Court is not convinced that the ALJ articulated sufficient good cause for rejecting the opinion of Dr. Fields. While this alone may not have warranted remand, when combined with the other asserted errors as discussed more fully elsewhere in this Opinion and Order, the Court cannot

affirmatively conclude that substantial evidence supports the ALJ's opinion as a whole.

> b. *Whether substantial evidence supports the ALJ's determination that Plaintiff's headaches are not a severe impairment*

Plaintiff also argues that the ALJ's determination that Plaintiff's headaches are not severe is not supported by substantial evidence, because the record establishes that they frequently interfered with Plaintiff's ability to function. Plaintiff further argues that the ALJ's reliance on her failure to seek treatment from a specialist with respect to her headaches was error, because the record also includes several notations that Plaintiff has no insurance and cannot afford specialists or additional testing. Defendant contends that the ALJ did not err by finding Plaintiff's headaches are nonsevere because Plaintiff failed to meet her burden to provide evidence showing they are severe. Defendant further argues that the ALJ's failure to find Plaintiff's headaches severe, if error, is harmless, because the ALJ found that Plaintiff had other severe impairments at Step two and therefore proceeded with the sequential evaluation process.

The Court agrees with the Commissioner's assertion that because the ALJ determined that Plaintiff had a severe impairment at Step two, this was sufficient to proceed with the evaluation. Thus, the ALJ's failure to find that Plaintiff's headaches also are severe impairments, standing alone, does not warrant remand. The ALJ's stated reason for discounting the severity of Plaintiff's headaches, however, deserves further discussion. The ALJ explained that Plaintiff's headaches and fatigues would not limit her to less than sedentary work. Tr. 25. In support of

this conclusion, the ALJ stated, "the claimant has required only minimal medical treatment for headaches and she has never seen a neurologist. She has also never had a brain CT or MRI scan." *Id.*

Plaintiff bears the ultimate burden of proving that she is disabled and must furnish medical and other evidence to support such a finding. 42 U.S.C. § 423(d)(5)(a); 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c). Accordingly, the burden to provide evidence demonstrating the severity of each of her alleged impairments rests with Plaintiff. Upon review of the record, Plaintiff's treatment records from Dr. Kala Seshadri dated as far back as 2004 reveal complaints of headaches. Tr. 216. Another of Plaintiff's medical records state that her chronic headaches began in 2002. Tr. 305. They were described as intractable associated with photophobia and nausea, and Plaintiff was prescribed medication. *See, e.g., id.* Plaintiff reported in June 2011 that the frequency had decreased. Tr. 328. At the hearing, Plaintiff testified that when she is unable to sleep, she gets migraines that can last up to four days. Tr. 45-46. Plaintiff stated that she gets migraines at least twice a month and they always last longer than one day. Tr. 47.

Plaintiff contends that the ALJ's reliance on her failure to seek treatment from a specialist or additional testing was improper and cannot establish substantial evidence, because the record is replete with references to her inability to afford specialists or other follow-up treatment. Doc. 21 at 16. In July 2004, an appointment for which Plaintiff presented with complaints of headaches, Dr. Seshadri's notes state that Plaintiff was "getting worse because of cutting back on

meds, as she can't afford it." Tr. 216. An April 15, 2009 record from Dr. Fields similarly states, "she has no insurance and is unemployed, so finances already limited with regards to routine health maintenance." Tr. 228. An April 4, 2011 record from Internal Medicine Associates also states that Plaintiff cannot afford treatment. Tr. 301. A Psychiatric Medication Management Notice from Lee Mental Health Center, Inc. dated February 1, 2012 also notes that Plaintiff has a "growth on foot—supposed to see a podiatrist but cannot afford it." Tr. 316.

The Eleventh Circuit has repeatedly held that a claimant's inability to afford treatment excuses noncompliance with recommended courses. In *Dawkins v. Bowen*, the court explained that when the claimant cannot afford the prescribed treatment, and there is no other way to obtain it, she is excused from noncompliance. 848 F.2d 1211, 1213 (11th Cir. 1988). The Commissioner bears the burden of proving *unjustified* noncompliance. *Id.* Courts in this district have previously questioned an ALJ's reliance on the plaintiff's noncompliance with treatment or medication due to an inability to pay for same. *See, e.g.*, *Zeigler v. Barnhart*, 310 F.Supp.2d 1221, 1225-26 (M.D. Fla. 2004) (order adopting report and recommendation recommending the case be reversed and remanded to the Commissioner). Other courts within the Eleventh Circuit have relied on *Dawkins* to find that an ALJ's reliance on a claimant's failure to obtain additional testing was error warranting remand.

In *Cronon v. Barnhart*, a court in the Northern District of Alabama noted that "[t]he ALJ placed heavy emphasis on the fact that plaintiff had had no MRI or additional testing performed, but she testified that she has not had the funds for

these expensive tests." 244 F.Supp.2d 1286, 1292 n.16 (N.D. Ala. 2003). The court continued by noting the Eleventh Circuit's position, first set forth in *Dawkins*, that poverty excuses noncompliance. *Id.*; *see also Davis v. Astrue*, 478 F.Supp.2d 1342 (N.D. Ala. 2007) (relying on *Dawkins* and noting the ALJ failed to consider the plaintiff's inability to pay for testing when citing lack of obtaining MRIs as a basis for his credibility determination). Even where a plaintiff has demonstrated an inability to pay for additional treatment, an ALJ's failure to consider a plaintiff's finances may not be error where the objective medical evidence did not otherwise support a finding of disability, *see Belle v. Barnhart*, 129 Fed. Appx. 558 (11th Cir. 2005), or the ALJ did not base his disability determination in large part on the plaintiff's noncompliance, *see Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

Here, the ALJ found that Plaintiff suffered from severe impairments at step two, and proceeded with the sequential evaluation in accordance with the Regulations. Thus, the ALJ's failure to identify headaches as an additional severe impairment, standing alone, does not constitute error. The ALJ's reliance in part on Plaintiff's failure to seek treatment from a specialist or obtain additional testing regarding her headaches, however, when combined with Plaintiff's other assertions of error discussed in this Opinion and Order, prevents the Court from concluding that the ALJ's decision as a whole is supported by substantial evidence.

> c. *Whether the ALJ's RFC determination is supported by substantial evidence*

Plaintiff also asserts that substantial evidence does not support the ALJ's determination that Plaintiff has the RFC to perform the full range of work at all

exertional levels, because the ALJ failed to include limitations in walking and standing caused by Plaintiff's right heel keloid and fatigue. Plaintiff also argues that, despite according great weight to the opinion of state agency consultant Maxine Ruddock, Ph.D., the ALJ did not include the additional limitations identified by that doctor. The Commissioner contends that the ALJ properly evaluated the medical evidence in accordance with the Regulations, and thus was not required to include limitations in Plaintiff's RFC that he found were not credible. With respect to Dr. Ruddock, the Commissioner acknowledges that the ALJ assigned great weight to the opinion, but argues that the ALJ did not state that he was adopting Dr. Ruddock's opinion as the RFC. The Commissioner therefore maintains that Plaintiff failed to meet her burden to prove that she was more limited than the ALJ's RFC determination.

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. Tr. 21; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The claimant's age, education and work experience are considered in determining her RFC and whether she can return to her past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §

404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)). The ALJ also "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Here, the ALJ determined that Plaintiff has the RFC to perform the full range of work at all exertional levels, but is limited to simple, routine, repetitive tasks with no interaction with the public. Tr. 22. In doing so, the ALJ stated that he considered all of Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence, including opinion evidence, as required by the Regulations. Tr. 23; 20 C.F.R. §§ 404.1529, 416.929; SSR 96-2p; SSR 96-5p; SSR 96-6p; SSR 06-3p. The ALJ concluded that Plaintiff is not capable of performing her PRW as a sales associate, assistant manager and store manager given her nonexertional limitations. Tr. 26. The ALJ then found that "[t]he claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." *Id.*

The ALJ expressly stated that he considered SSR 85-15 and discussed its relevant contents in his opinion, but determined "the evidence in this case shows that the claimant's documented mental limitations do not result in deficits which would preclude the performance of competitive remunerative work requiring the ability to understand, carry out and remember instructions; respond appropriately to supervisors, coworkers and work situations; and deal with changes in a routine work setting." Tr. 26-27. The ALJ therefore concluded that Plaintiff could make a vocational adjustment to other work existing in significant numbers in the national economy. Tr. 27.

Here, it is not clear whether the ALJ sufficiently articulated reasons for discounting the opinion of Dr. Fields, Plaintiff's treating physician, with respect to her right heel keloid and other alleged physical impairments. Moreover, the ALJ rejected Dr. Fields' opinion as to some of Plaintiff's mental limitations in part because he was not a psychologist or psychiatrist. Tr. 25. The ALJ then credited the opinions of Dr. Ruddock—a psychiatrist—but failed to acknowledge or include the additional nonexertional limitations she identified, such as that Plaintiff is moderately limited in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms; to accept and respond appropriately to criticism from supervisors; to get along with coworkers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the workplace. Tr. 252. Dr. Ruddock also noted that Plaintiff may have occasional difficulty interacting in unfamiliar social settings and adapting to

unfamiliar circumstances. Tr. 253. Dr. Ruddock further noted that Plaintiff's mental health symptoms impact her consistency of performance and completion. Tr. 267.

Finally, as Plaintiff contends, the ALJ also specifically stated that he found Plaintiff's fatigue is a symptom of her depression rather than a separate impairment, yet failed to include limitations from fatigue in his RFC determination in contravention of SSR 96-8p. The ALJ stated, "[t]he undersigned finds her fatigue is likely associated with her mental impairment . . . ." Tr. 20. Upon acknowledging that Plaintiff's fatigue is related to other impairments the ALJ previously determined are severe, he was required to discuss any limitations caused by such symptoms. *See* SSR 96-8p ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, *including the impact of any related symptoms.*") (emphasis added). The ALJ failed to do so.

While Plaintiff's arguments with respect to omissions from her RFC individually may not have led the Court to conclude that the ALJ's RFC determination is not supported by substantial evidence, considering the omissions and the record as a whole leads precisely to that conclusion. Coupled with the ALJ's assignment of great weight to a state agency opinion that found other nonexertional limitations, yet failure to include those limitations in Plaintiff's RFC or explain in detail which specific portions of the state agency medical source's opinions were given

great weight and which something less, the Court simply cannot conclude the RFC is supported by substantial evidence.

### d. *Whether the ALJ erred by failing to consult a VE*

Plaintiff also contends that the ALJ's failure to adequately address and include her additional nonexertional limitations compounded his error; specifically, his conclusion that Plaintiff's nonexertional limitations do not significantly erode the occupational base led him to rely solely on the Grids in making his determination that there are other jobs existing in significant numbers that Plaintiff can perform, which in turn led to finding that she is not disabled. The Commissioner maintains that the ALJ appropriately accounted for all of Plaintiff's nonexertional limitations that are supported by the record; but, the Commissioner suggests that if the Court is inclined to remand the case based on the ALJ's failure to determine Plaintiff's nonexertional limitations and whether they erode the occupational base, that a remand for the ALJ to make such findings is appropriate rather than a remand with instructions to consult a VE, or a reversal with an award of benefits. Doc. 24 at 18 n.2.

"Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985). "It is only when the claimant can clearly do unlimited types of [ ] work that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists

in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). Thus, "[w]hen a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE." *Smith v. Soc. Sec. Admin.*, 272 Fed. Appx. 789, 799-800 (11th Cir. 2008) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)). If non-exertional impairments are minor or are found to be not credible, however, then exclusive reliance on the grids may be appropriate. *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 826 (11th Cir. 2010).

Based upon the Court's conclusions that the ALJ's assignment of reduced weight to the opinions of Plaintiff's treating physicians and related failure to include or adequately address Plaintiff's nonexertional impairments prevent the Court from finding that the ALJ's opinion is supported by substantial evidence, the Court similarly is not convinced that exclusive reliance on the grids was appropriate here. On remand, if the Commissioner finds that Plaintiff's treating physicians' opinions should have been accorded more weight, that Plaintiff's headaches are severe, or that Plaintiff has additional exertional nonexertional limitations, then testimony from a VE regarding whether there exists other jobs that Plaintiff can perform would be appropriate. Because a determination whether a VE is required depends, at least in part, upon the ALJ's determinations with respect to the arguments addressed throughout this Opinion and Order, the Court declines to expressly direct the Commissioner to elicit testimony from a VE on remand. The Court will leave that

determination to the Commissioner after reevaluating the medical and opinion evidence of record in accordance with the Court's concerns expressed herein.

### e. *Whether the case should be remanded to a different ALJ*

Finally, Plaintiff requests if the Court determine a remand to the Commissioner is appropriate that the Commissioner be directed to assign Plaintiff's case to a different ALJ. The Regulations provide that an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. Here, however, the Court agrees with the Commissioner that Plaintiff has not shown that ALJ Butler's lawsuit, filed after his opinion in this case was issued and which does not involve Plaintiff's case, resulted in actual bias. *See* Doc. 24 at 19-20. Although the Court declines to direct the Commissioner to assign this case to a different ALJ and instead leaves that decision to the Commissioner's discretion, in order to avoid the *appearance* of bias, the Commissioner should at least consider reassigning this case to another ALJ.

### V. Conclusion

When reviewing the final decision of the Commissioner, the Court does not "reweigh the evidence" or "decide the facts anew" even where the evidence preponderates against the Commissioner's decision. *Winschel*, 631 F.3d at 1178; *Edwards*, 937 F.2d at 584 n.3. While the Court does not conclude that any one of Plaintiff's asserted errors, standing alone, necessarily warrants remand, when reviewing the record as a whole as the Court is required to do, *Foote*, 67 F.3d at 1560,

the Court simply cannot conclude that substantial evidence supports the ALJ's decision that Plaintiff is not disabled.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to reevaluate Plaintiff's claim for disability, DIB and SSI consistent with this Opinion and Order.

2. The Clerk of Court is directed to enter judgment accordingly, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 8th day of September, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record